## IN THE COURT OF APPEALS OF IOWA

No. 20-0620
Filed August 5, 2020

**IN THE INTEREST OF K.S.,**
**Minor Child,**

**A.S., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

A father appeals the termination of his parental rights to his now teenaged son. **AFFIRMED.**

Gina E.V. Burress of Carr Law Firm, P.L.C., Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Michael Sorci of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and May and Greer, JJ.

**TABOR, Presiding Judge.**

A father, Antonio, challenges the termination of his parental relationship with his now thirteen-year-old son, K.S.[1]  The record shows Antonio has not been a meaningful presence in his son's life so far.  And that situation is unlikely to change in the near term because Antonio is serving a prison sentence.  K.S. has been safe and healthy in a placement with his maternal –aunt, Michelle, since April 2018.  Given these facts, and to ensure K.S. soon has permanency, we reject Antonio's challenge and affirm the termination order.[2]

## I.  Facts and Prior Proceedings

K.S. was born in 2007 to Amanda and Antonio.  The juvenile court's termination order focuses on the trauma K.S. experienced in Amanda's care.  In April 2018, the Iowa Department of Human Services (DHS) removed K.S. and his three younger half-siblings from the mother's home.  Significantly, Antonio was not part of that home.[3]  At the termination hearing, Antonio testified that he lived with

---

[1] The mother, Amanda, also tried to appeal, but she failed to submit her petition on time.  Our supreme court dismissed her appeal, so we are ruling only on Antonio's challenge.

[2] We review termination-of-parental-rights proceedings de novo.  *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).  The juvenile court's factual findings are not binding, but they deserve weighty consideration.  *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).  We will uphold termination if clear and convincing evidence supports at least one statutory ground.  *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).  Clear and convincing "is the highest evidentiary burden in civil cases.  It means there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence."  *In re M.S.*, 889 N.W.2d 675, 679 (Iowa Ct. App. 2016).  We impose this significant burden on the petitioning party "to minimize the risk of an erroneous deprivation of the parent's fundamental liberty interest" in raising their child.  *Id.*

[3] Antonio has five other children who do not share Amanda as their mother, but who are also half-siblings to K.S.  Antonio's parental rights to two of those children were terminated in 2016 and to a third in 2019.

K.S. when the child was younger but admitted he has not maintained a relationship with his son in recent years.

While Antonio was absent, K.S. suffered in his mother's care. Beginning in 2013, the DHS learned of child abuse in Amanda's home. The reports were voluminous and continued coming in until the children's removal in 2018. They included reports of domestic violence between Amanda and her paramour, Littleton; physical violence against the children; illegal drug use; drug sales; and threats at gunpoint. K.S. and his siblings did not attend school regularly.

When K.S. was in school, he received help from Madison Sweet, an elementary school therapist. In April 2018, Sweet sensed K.S. was in imminent danger and called the police and the DHS. K.S. told police he did not want to go home and revealed that each time the DHS visited his home Amanda beat him. The police took K.S. to a shelter for his safety. K.S. identified "Aunt Shell" as a safe family member with whom he could stay. Meanwhile, Antonio was in jail.

Authorities transported Antonio from jail to attend the removal hearing in May 2018. At the hearing, Antonio said he had not seen K.S. for at least three years. Antonio was also subject to a five-year no-contact order with Amanda after he was convicted of harassment. The court approved K.S.'s removal from the home of Amanda and Littleton. Later that summer, the court confirmed K.S.'s placement with Amanda's sister, Michelle. K.S. has continued to live with his aunt since then.

After removal, the record revealed the terrible toll his parents' neglect had taken on K.S. In January 2019, psychologist Rachel Pobanz completed an evaluation for K.S. Dr. Pobanz noted the child's "significant history of neglect" after

"experiencing and witnessing abuse and other trauma." She noted that he had trust issues and was unsure about forming bonds with other people. K.S. exhibited suicidal ideation, desperation, anxiety, and fear. According to his evaluation, K.S. had "learned to expect that good things do not last and that family support and peer relationships will often end with disappointment and rejection." Dr. Pobanz confirmed K.S. had not seen Antonio in over five years.

Despite his hardships, Dr. Pobanz found K.S. was a "good kid" who exhibited compassion and enjoyed playing football. The evaluation also showed that K.S. was close to his "Aunt Shell," his siblings, and his cousins. His home with Michelle was a safe, structured, and supportive environment. Dr. Pobanz stressed that it was imperative for K.S.'s atmosphere to remain positive.

The State petitioned to terminate Antonio's parental relationship with K.S. in June 2019. The juvenile court combined the permanency and termination hearings, and it heard evidence on three days across the fall of 2019 and January 2020. On the first day, Antonio testified he did have a relationship his son for a "very short time" but had not seen K.S. "in quite some time."[4] He explained that he had not maintained a connection with K.S. "because me and Amanda lost contact."

Relevant to his fitness as a parent, Antonio admitted a history of methamphetamine use. He also testified he had been diagnosed with bipolar disorder but was not taking medication for it at the time of the trial. Antonio

---

[4] When Antonio testified in September 2019 he was in the Polk County jail awaiting sentencing on several criminal convictions. By the November 2019 hearing, Antonio was in prison and participated by telephone.

acknowledged he had received a "fair chance" throughout the child-in-need-of-assistance case and that his own choices had led him to his current criminal difficulties. As for his son's future, Antonio did not object to K.S. staying with his aunt "if he's happy there." He told the juvenile court he would "love to be a part of [his] son's life" but knew his chances were "very, very slim."

## II. Legal Analysis

Termination of parental rights under Iowa Code chapter 232 follows a three-step analysis. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (citing *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010)).

> First, the court must determine if a ground for termination under section 232.116(1) has been established. If a ground for termination is established, the court must, secondly, apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights. Third, if the statutory best-interest framework supports termination of parental rights, the court must consider if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights.

*Id.*

### A. Statutory Grounds

In his petition on appeal, Antonio contends the State failed to offer clear and convincing evidence on the three statutory grounds for termination—paragraphs (e), (f), and (g) of Iowa Code section 232.116(1) (2019). When, as here, the juvenile court rests its decision on more than one subsection of Iowa Code section 232.116(1), we may affirm on any ground supported by clear and convincing evidence. *Id.* We will address paragraph (f).

That provision requires that:

1. The child is four years of age or older.
2. The child has been adjudicated a child in need of assistance pursuant to section 232.96.
3. The child has been removed from the physical custody of the child's parent for at least twelve of the last eighteen months . . . .
4. There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

Antonio contests only the fourth element. He argues that because the record does not show K.S. opposes being reunited with him upon his release from prison, his parental rights should be preserved. We are not persuaded by this position.

True, our record does not show K.S. expressed opposition to being placed with Antonio. But that is likely because K.S. does not have any significant relationship with his father. Social worker Randalyn Parker testified K.S. does not talk about Antonio except to say that he is in jail. Antonio acknowledged he had not maintained a relationship with K.S. Because they are virtually strangers, it would be unsound to interpret the son's lack of opposition as an affirmative desire to wait for his father to be available as a parent. We have no doubt that Antonio's prolonged absence from K.S.'s life and his incarceration at the time of the termination hearing correctly led the juvenile court to conclude K.S. could not be placed in his father's custody.[5] We affirm under paragraph (f).

---

[5] "At the present time," as used in section 232.116(1)(f) means "at the time of the hearing." *See A.M.*, 843 N.W.2d at111.

**B.**     **Statutory Best-Interests Framework**

With statutory grounds for termination established, we turn to a consideration of the child's best interests under section 232.116(2).   Antonio contends that terminating his parental rights is not in K.S.'s best interests because it would "forever sever" their bond.

Under section 232.116(2), we "give primary consideration to the child's safety, to the best placement for furthering" their "long-term nurturing and growth, and to" their "physical, mental, and emotional condition and needs."   On top of that, we consider "whether the child has become integrated into the foster family to the extent that the child's familial identity is with the foster family, and whether the foster family is able and willing to permanently integrate the child into the foster family."   *Id.* § 232.116(2)(b).

Our review of the record shows these factors support the termination of Antonio's parental rights.   This step will give K.S. the benefit of permanency in his placement with "Aunt Shell" and her family.   K.S.'s comfort level in his current placement is evident from the testimony of DHS worker Kira Cheville.   She recalled that when she first visited K.S. and his siblings at Michelle's home,

> all four children were pretty quiet, didn't have a whole lot to say to me.   Each month, that progressed a little bit more with how much they were willing to talk to me.   [K.S.] was a big one.   He would just give me one-word answers . . . .   And [he] is joking, laughing, having fun with the family while I'm there now.

Michelle ensures K.S. has regular doctor, dental, and therapy appointments.   K.S. is learning to trust that adults will take care of him, and he feels safe in Michelle's home.   By contrast, the professionals involved in the case were unaware of any bond between K.S. and Antonio.   Antonio has no real

complaint about K.S. remaining with Michelle if he is happy there. Michelle and her husband wish to adopt K.S. and his siblings.[6] Termination removes a barrier to K.S.'s adoption. And the professionals all testified that it is imperative for K.S. to have permanency in a safe and nurturing home to continue his progress toward mental and emotional health. Thus, we find it in K.S.'s best interest to terminate Antonio's parental rights.

## C. Permissive Factors

Finally, we consider whether any factor in section 232.116(3) should preclude termination of parental rights. *See In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018) (reiterating these factors are permissive, not mandatory).

Antonio argues that terminating his parental rights is unnecessary because K.S. is in the care of an aunt. *See* Iowa Code § 232.116(3)(a) (allowing the court to forego termination if a "relative has legal custody of the child"). But while "Aunt Shell" has cared for K.S. throughout the CINA proceedings, his "legal custody" has remained with the DHS. So this factor does not apply. *See A.M.*, 843 N.W.2d at 113. Even if Michelle did have legal custody, her willingness to fold K.S. into her family does not satisfy Antonio's burden to prove this permissive factor should preclude termination. *See A.S.*, 906 N.W.2d at 476. After years of trauma, K.S. was desperately in need of stability and knowledge that the rug would not be pulled out from under him. Plus, the less-certain option of guardianship was not explored in these termination proceedings. Termination need not be set aside based on section 232.116(3)(a).

---

[6] The record shows K.S. is a devoted big brother to his siblings.

**D.     More Time for Reunification**

Antonio mentions in passing that he should have another six months to reunite with K.S.  *See* Iowa Code § 232.104(2)(b).  The State contends Antonio did not preserve error because he did not raise this argument in the juvenile court. We agree Antonio did not preserve error on this argument, so we do not reach it.

**AFFIRMED.**